CHIEF JUSTICE TURNAGE
concurring and dissenting:
I agree with the result of this case declaring § 45-5-505, MCA, unconstitutional. However, I dissent to the majority’s ruling basing unconstitutionality on Article II, Section 10 of the Montana Constitution.
The majority has unnecessarily and unwisely used privacy as the basis for its decision. Two provisions of the Montana Code are the focus of the issue in this case.
Section 45-2-101(20), MCA, provides this definition:
“Deviate sexual relations” means sexual contact or sexual intercourse between two persons of the same sex[.} [Emphasis added.] Section 45-5-505, MCA, provides:
Deviate sexual conduct. (1) A person who knowingly engages in deviate sexual relations or who causes another to engage in deviate sexual relations commits the offense of deviate sexual conduct.
(2) A person convicted of the offense of deviate sexual conduct shall be imprisoned in the state prison for any term not to exceed 10 years or be fined in an amount not to exceed $50,000, or both.
The statutory scheme of the legislature clearly criminalizes sexual acts between persons of the same sex and decriminalizes the same sexual conduct engaged in by persons of opposite sexes. Clearly, this is a denial of the constitutional guarantee of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 4 of the Montana Constitution.
*457 To be treated equally under the law is a far broader constitutional right, together with the right of due process, than any other constitutional guarantee in either the federal or state constitution.
I agree with the majority that § 45-5-505, MCA, is unconstitutional as applied to noncommercial homosexual activity engaged in by adults consensually and in private. However, unlike the majority, I would base that determination on violation of constitutional guarantees of equal protection under the Fourteenth Amendment to the United States Constitution and Article II, Section 4 of the Montana Constitution.
The Equal Protection Clause prohibits any classification scheme which fails a rational basis analysis. Under rational basis analysis, the Court’s inquiry must be whether there exists a legitimate government objective which bears some identifiable rational relationship to the classification made. See Burlington Northern R. Co. v. Ford (1992), 504 U.S. 648, 651, 112 S.Ct. 2184, 2186, 119 L.Ed.2d 432, 438; Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 43, 744 P.2d 895, 897.
As is discussed at some length in the majority opinion, § 45-5-505, MCA, bears no rational relationship to either of its suggested government purposes, as an expression of societal mores or to protect public health. As an expression of societal mores, the statute is both over-broad and underinclusive, forbidding consensual intimate touching between homosexuals without any evidence that such conduct was historically forbidden, yet permitting heterosexuals to engage in conduct long deemed inappropriate by some segments of society, such as anal sex, sex outside of marriage, and non-procreative sex. Furthermore, the State has not demonstrated, nor can it demonstrate, that the purpose of § 45-5-505, MCA, was or is to protect public health. Not one of the three public health experts who testified in this case suggested that § 45-5-505, MCA, offered any benefit to the public health.
In Com. v. Wasson (Kentucky 1992), 842 S.W.2d 487, the Supreme Court of Kentucky struck down a statute similar to § 45-5-505, MCA, which defined as a misdemeanor criminal offense “deviate sexual intercourse with another person of the same sex.” In doing so, the court reasoned:
In the final analysis we can attribute no legislative purpose to this statute except to single out homosexuals for different treatment for indulging their sexual preference by engaging in the same activity heterosexuals are now at liberty to perform. By 1974 [when the Kentucky statute was enacted] there had already been a sea change in societal values insofar as attaching criminal penalties to extramarital sex. The question is whether a society that no *458 longer criminalizes adultery, fornication, or deviate sexual intercourse between heterosexuals, has a rational basis to single out homosexual acts for different treatment. Is there a rational basis for declaring this one type of sexual immorality so destructive of family values as to merit criminal punishment whereas other acts of sexual immorality which were likewise forbidden by the same religious and traditional heritage of Western civilization are now decriminalized? If there is a rational basis for different treatment it has yet to be demonstrated in this case. We need not sympathize, agree with, or even understand the sexual preference of homosexuals in order to recognize their right to equal treatment before the bar of criminal justice.
Wasson, 842 S.W.2d at 501.
No rational basis has been demonstrated for the classification created under § 45-5-505, MCA. I conclude that the statute is violative of the Equal Protection Clauses of the Montana and the United States Constitutions as applied to persons of the same sex engaging in noncommercial, consensual, private sexual conduct, and is therefore unconstitutional. I therefore dissent and specially concur that § 45-5-505, MCA, is unconstitutional as a denial of equal protection.
So much for the unnecessary reliance by the majority on Article II, Section 10 of the Montana Constitution and now as to the basis for the majority opinion being unwise.
The opinion of the majority, I submit, is an open-door invitation to challenges of legislative enactments by the people of Montana, through their constitutionally-empowered legislature, prohibiting conduct that they believe to be destructive to Montana’s society as a whole. There are many such statutes on the books that not only have a rational basis but are very important to the people of Montana.
I submit that this Court should not be surprised if one of the first challenges under the theory espoused by the majority in this case will be to § 45-5-105, MCA, which provides severe criminal sanctions for a person who purposely aids or solicits another to commit suicide. The majority opinion cites with approval the District Court’s statement that “a person’s decision as to sexual matters is probably one of the most private areas of a person’s life.” This statement is correct. However, there is something in the lives of people equally private and more important — the right to life or death.
I respectfully concur as to the result and dissent as to the reasoning used by the majority.